UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| WAYNE REYNOLDS, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No. 2:16-cv-00176-JMS-MJD |
| CINDY YORK R.N., REGINA ROBINSON R.N., KIM HOPSIN R.N., | ) | |
| Defendants. | ) | |

**Entry Granting in Part and Denying in Part Motion for Summary Judgment**

Plaintiff Wayne Reynolds, an inmate at the Wabash Valley Correctional Facility, brings this action pursuant to pursuant to 42 U.S.C. § 1983 alleging that the defendants were deliberately indifferent to his serious medical needs in violation of his Eighth Amendment rights. Specifically, Reynolds claims that the defendants failed to respond adequately to his kidney stone pain. The defendants move for summary judgment and Reynolds has responded.[1] For the following reasons, the motion for summary judgment, dkt. [27], is **granted in part and denied in part**.

**I. Standard of Review**

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is

---

[1] In addition to Reynolds's response and the defendants' reply, Reynolds has filed a supplemental reply, a sur-reply, and newly discovered evidence. The defendants have responded to those filings and Reynolds filed a response to their response. All of these filings have been considered and the relevant facts and arguments are discussed below. The submission of newly discovered evidence filed on September 26, 2017, has been excluded.

entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the admissible evidence presented by the non-moving party must be believed and all reasonable inferences must be drawn in the non-movant's favor. *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007); *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) ("We view the record in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor."). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490. Finally, the non-moving party bears the burden of specifically identifying the relevant evidence of record, and "the court is not required to scour the record in search of evidence to defeat a motion for summary judgment." *Ritchie v. Glidden Co.,* 242 F.3d 713, 723 (7th Cir. 2001).

## II. Factual Background

Mr. Reynolds is diabetic. In October of 2015, he received metformin and glipizide to control his diabetes and attended the Accu-Chek line three times a day to monitor his blood glucose levels. On October 9, 2015, defendant Nurse Cindy York and another nurse processed the morning Accu-Chek line, beginning at approximately 5:00 am.

According to Nurse York, the correctional officers need the nurses to process the line efficiently due to the security issues involved with having many offenders waiting for treatment. Often inmates will make medical complaints or raise health issues during the Accu-Chek process. But Accu-Chek is not a general nursing appointment to discuss all of an inmate's current health needs. Allowing inmates to raise all health needs disrupts the process, extending the time needed to complete the line, and delaying treatment – including needed insulin

2

injections – to others who are waiting. Thus, when an offender raises a health concern, Nurse York will assess whether the condition requires immediate treatment. If the symptoms indicate an immediate need for treatment, she will refer the inmate to the infirmary. Otherwise, she advises the inmate to submit a health service request for treatment when he returns to the housing unit so that he can be triaged.

At 5:30 a.m., during his Accu-Check visit, Reynolds reported abdominal pain to Nurse York. Nurse York recalls that Reynolds reported abdominal pain and she advised him to submit a request for the nursing line for evaluation that day. When she saw him, she did not think he exhibited the signs and symptoms of significant pain or the need for emergent treatment. He could walk without issue, he did not vomit, and he was not crouched over. Nurse York did not think Reynolds had kidney stones, but something like GI upset, which could be addressed at the nurse's line without worsening his condition. Reynolds says she did not assess his pain at all and simply told him to go back to his cell.

After Accu-Chek, an officer escorted Reynolds from the infirmary. Outside, Reynolds "stopped in the hall cause I couldn't make it." He explained his pain to the "desk C/O," who called Nurse York. Nurse York came out to the desk area, but still told Reynolds to return to his cell. Approximately an hour later, Reynolds pushed the emergency button in his cell and reported abdominal pain to the correctional officer in his unit, Officer Reed. At 6:45 am, Reed called the infirmary to report that Reynolds required evaluation.

Nurse York had left work by 6:30 am. Nurse Robinson clocked in at 7:00 am that morning, when her shift began. Although she is now the Director of Nursing, Nurse Robinson was not on October 9, 2015, and did not have any supervisory role. Sometime after she arrived at

3

work, she learned an officer had called the infirmary to report that an inmate needed evaluation, and she promptly left to assess Reynolds with her satchel of medical supplies.

At approximately 7:30 am, Nurse Robinson arrived at Reynolds' cell and determined he needed to be immediately transported to the infirmary for further evaluation. She had not brought a wheelchair or stretcher because she did not know to what extent he would need help with transport. However, Nurse Robinson was confident that if Reynolds did need help, it was readily available. She had Reynolds conveyed to the infirmary.

At the infirmary, Nurse Robinson performed an emergency evaluation of Reynolds's abdominal pain. He reported a gradual onset of the pain, which became moderate to severe, over more than one hour. Reynolds stated that the pain started sometime in the night and was in his right upper quadrant. He described the pain as sharp and constant without change or relieving factors. Nurse Robinson noted that the correctional staff called the infirmary because he reported severe abdominal pain. He reported diarrhea and vomiting to Nurse Robinson. She called Dr. Byrd at 7:45 am to evaluate him. Dr. Byrd examined him and entered his findings into the medical record at 7:58 am.

Dr. Byrd ordered a chest x-ray, an x-ray of the abdomen, and immediate bloodwork. The x-rays were negative. Dr. Byrd noted Reynolds was positive for abdominal pain, changes in stool pattern, decreased appetite, diarrhea, nausea, vomiting, fatigue, malaise, and night sweats. He noted that Reynolds had severe right lower quadrant abdominal tenderness, but the abdomen was symmetric with no distention. Concerned that Reynolds might have appendicitis, Dr. Byrd sent him to the emergency room.

Reynolds went to Terre Haute Regional Hospital where emergency room physician Keshava Redding evaluated him at approximately 11:50 am. Dr. Redding obtained a CT of Reynolds's abdomen. Reynolds had a kidney stone in his ureter – the tube that connects the kidney to the bladder. The stone was six millimeters in size and had almost passed from the ureter into the bladder. It caused "minimal" dilation of the ureter, expected with a kidney stone. Once the stone reached the bladder, the pain would abate. In the meantime, Dr. Reddy ordered Reynolds hydromorphone to control his pain. No further intervention was required beyond pain management: the stone passed without issue.

The hospital discharged Reynolds at 2:52 pm. Dr. Redding noted that the stone had passed through the ureter to the Reynolds's bladder, and the pain would stop. He advised Reynolds to drink lots of water and remain active. He prescribed pain medication, which was provided to Reynolds. After he returned to Wabash, the nurse saw Reynolds. She obtained his vital signs and noted his diagnosis of kidney stones. Reynolds was stable and returned to his housing unit.

When Dr. Byrd followed up with Reynolds on October 27, 2015, he had recovered without complications or further symptoms or issues from the kidney stones since the hospital visit. Dr. Byrd opines that any delay caused by Nurse York or Nurse Robinson did not impact the course of treatment Reynolds received or his health. In his opinion, Nurses York and Robinson provided the appropriate course of nursing care to Reynolds.

Later, Reynolds filed a grievance complaining of the course of care he received. HSA Kimberly Hobson, who is also a registered nurse, reviewed his complaints. She was not involved in the care Reynolds received on October 9, 2015. Instead, she learned of Reynolds's complaints

through his grievance. Based on her investigation, Nurse Hobson concluded that both Nurse York and Nurse Robinson provided appropriate nursing care to Reynolds.

### III. Discussion

The defendants move for summary judgment on Reynolds's claims arguing that they were not deliberately indifferent to his serious medical needs.

Pursuant to the Eighth Amendment, prison officials have a duty to provide humane conditions of confinement, meaning, they must take reasonable measures to guarantee the safety of the inmates and ensure that they receive adequate food, clothing, shelter, and medical care. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To prevail on an Eighth Amendment deliberate indifference medical claim, a plaintiff must demonstrate two elements: (1) he suffered from an objectively serious medical condition; and (2) the defendant knew about the plaintiff's condition and the substantial risk of harm it posed, but disregarded that risk. *Id.* at 837; *Pittman ex rel. Hamilton v. County of Madison, Ill.*, 746 F.3d 766, 775 (7th Cir. 2014).

"[C]onduct is 'deliberately indifferent' when the official has acted in an intentional or criminally reckless manner, *i.e.*, "the defendant must have known that the plaintiff 'was at serious risk of being harmed [and] decided not to do anything to prevent that harm from occurring even though he could have easily done so.'" *Board v. Freeman*, 394 F.3d 469, 478 (7th Cir. 2005) (quoting *Armstrong v. Squadrito*, 152 F.3d 564, 577 (7th Cir. 1998)). "To infer deliberate indifference on the basis of a physician's treatment decision, the decision must be so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment." *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006); *see Plummer v. Wexford Health Sources, Inc.*, 609 Fed. Appx. 861, 2015 WL 4461297, *2 (7th Cir.

6

2015) (holding that defendant doctors were not deliberately indifferent because there was "no evidence suggesting that the defendants failed to exercise medical judgment or responded inappropriately to [the plaintiff's] ailments"). In addition, the Seventh Circuit has explained that "[a] medical professional is entitled to deference in treatment decisions unless no minimally competent professional would have [recommended the same] under those circumstances." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014). "Disagreement between a prisoner and his doctor, or even between two medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation." *Id.*

For purposes of summary judgment, the parties do not dispute that Reynolds's kidney stone pain was a serious medical need, but the defendants argue that they were not deliberately indifferent to it. The deliberate indifference claims against each defendant will be addressed in turn.

A. *Nurse York*

Nurse York argues that when she performed Accu-Check, she did not see any indication that Reynold's abdominal pain required immediate treatment. He walked, was not crouched over, and did not vomit.[2] As he states in his complaint, "within minutes of returning to his cell, [he] doubled over and fell to the floor in PAIN." Nurse York "did not think, in [her] professional judgment, that advising the patient [to] attend the nurse's line would exacerbate his condition or pose any risk." Dkt. 29-4. Because she was performing Accu-Check and not a general nursing

---

[2] Reynolds contends in his surreply in opposition to the motion for summary judgment that, although he was not crouched over, he was down on one knee in pain. The defendants ask the Court to ignore this statement since it was presented at such a late stage of the proceedings. Because York's request for summary judgment can be considered without the statement that Reynolds was down on one knee, that statement will not be considered at this time.

appointment, she limited her assessment to whether Reynolds exhibited symptoms requiring immediate treatment, rather than a general nursing appointment. Reynolds responds that York performed no assessment of his pain whatsoever and that she used the fact that she was performing Accu-Check as an excuse for failing to evaluate him properly. He asserts that he was the last inmate in line and concludes that there should have been no security issues in allowing him to stay to be evaluated. Reynolds further contends that, before he left the infirmary, the desk officer in the infirmary called Nurse York over to evaluate Reynolds based on his complaints of pain as he was leaving the infirmary, but that Nurse York would not evaluate him. He also states that correctional officers made several calls to the infirmary to report his symptoms.

Reynolds has presented sufficient evidence to create a genuine issue of material fact regarding whether Nurse York was deliberately indifferent to his serious medical needs. This includes his statements that he told her that he was in serious pain and that he had difficulty walking out of the infirmary such that the officer at the desk called Nurse York, but she still would not evaluate him. York compares this case to that in *Daniels v. Harper*, 640 F.App'x 519, 521 (7th Cir. 2016). The plaintiff in that case suffered from an asthma attack and alleged that the nurse was deliberately indifferent to this serious medical need. The Seventh Circuit explained that because the plaintiff had stated to the nurse only that he was having difficulty breathing because of his asthma and wanted treatment, he did not show that she was aware of a substantial risk of serious harm to him. He did not report, and did not assert that he displayed the symptoms of an attack that he says he developed only later, *after* she saw him: wheezing, coughing, shallow breathing, nausea, light-headedness, and an inability to complete sentences. Without seeing and

8

disregarding symptoms of a severe attack, the nurse was not aware of a substantial risk of serious harm to the plaintiff that required immediate medical attention. *Id.*

Here, Reynolds told Nurse York that he was experiencing severe abdominal pain. Nurse York determined that he did not need immediate attention because she observed him walking and because he did not vomit. But Reynolds's complaints of abdominal pain are not like complaints of asthma that can be easily visually observed. There is no evidence that Nurse York did anything other than visually observe Reynolds to determine whether she thought his pain required immediate treatment. While Nurse York states that Reynolds did not seem to have difficulty walking, Reynolds says that he did. Further, when Reynolds reported this pain to a correctional officer, he asserts that the correctional officer called Nurse York over, presumably because the officer believed Reynolds was in serious pain. A reasonable jury could conclude that, by simply observing Reynolds visually and concluding that he did not have an urgent need because he could walk and did not vomit, Nurse exhibited deliberate indifference to Reynolds's serious medical needs.

B. *Nurse Robinson*

Nurse Robinson also argues that she was not deliberately indifferent to Reynolds's need for medical attention. Robinson asserts that Correctional Officer Reed alerted medical of Reynolds's pain complaints at 6:45 a.m. It is unclear who took this call as Nurse York left work at 6:30 a.m. and Nurse Robinson did not arrive at work until 7:00 a.m.[3] Robinson contends that

---

[3] Reynolds presents an affidavit from a correctional officer stating that the office called the medical unit several times that morning. The defendants object to the admissibility of that affidavit. But it remains undisputed that Nurse York left work at 6:30 and Nurse Robinson did not arrive until 7:00. So, whether calls were made before 7:00 a.m. is irrelevant to a determination of whether Nurse Robinson was deliberately indifferent to Reynolds's needs.

when she learned that Reynolds needed attention, she collected her medical bag and went to evaluate him, arriving at 7:30. When she arrived, she had Reynolds transported to the infirmary and called Dr. Byrd to evaluate him.

Robinson is entitled to summary judgment on Reynolds's claims. It is undisputed that she collected her medical bag and proceeded to evaluate Reynolds when she learned that he had requested medical assistance. When she arrived and evaluated him, she directed him to the medical unit and called Dr. Byrd. While Reynolds questions the amount of time it took Reynolds to get to his cell, there is no evidence that Robinson ignored his complaints or otherwise unreasonably delayed in providing him care.

C. *Nurse Hobson*

Finally, Nurse Hobson asserts that she is entitled to summary judgment on Reynolds's claims. Reynolds claims that Nurse Hobson is responsible for ensuring that the health care providers she supervises provide timely care and that, when reviewing his grievance, Nurse Hobson ignored the delays in treatment he received.

Hobson argues that she was not involved in the care Reynolds received on October 9, 2015, that she was not aware of any incidents where Nurse York or Nurse Robinson ignored signs or symptoms of an urgent medical issue, and that her only involvement in the care at issue in Reynolds's complaint was in her review of Reynolds's grievance. Reynolds argues that Nurse Hobson is responsible for training nursing staff and concludes that the alleged failure of Nurse York to treat him properly must have resulted from a failure to train by Nurse Hobson. He also asserts examples of other incidents in which he contends that medical staff unreasonably delayed

in treating inmates. Finally, Reynolds contends that Nurse Hobson's denial of his grievance was the result of deliberate indifference on her part.

Nurse Hobson has demonstrated that she is entitled to summary judgment on Reynolds's claims. Liability for deliberate indifference "requires that a defendant be personally involved in the alleged constitutional deprivation." *Matz v. Klotka*, 769 F.3d 517, 528 (7th Cir. 2014); *see Minix v. Canarecci*, 597 F.3d 824, 833 (7th Cir. 2010) ("[I]ndividual liability under § 1983 requires 'personal involvement in the alleged constitutional deprivation.'") (citation and quotation marks omitted). Whether supervisory personnel at a prison are sufficiently involved in an alleged constitutional violation such that they may be liable for damages often depends on that person's knowledge of, and responsibilities regarding, the alleged harm. Reynolds has presented no evidence that Nurse Hobson failed to train Nurses York and Robinson or other nursing staff on how to properly respond to inmate complaints. The incidents of alleged improper care cited by Reynolds are not enough to demonstrate this. Reynolds does not identify the nursing staff involved in these incidents or describe when they happened. These examples are therefore too vague to support a conclusion that Nurse Hobson specifically was deliberately indifferent to any inmate's particular need or to a need for training on responding to medical emergencies.

Reynolds also contends that Nurse Hobson's denial of his grievance demonstrates deliberate indifference. But there is no right to a particular outcome for any grievance, so the denial of Reynolds's grievance did not violate his rights. *See Antonelli v. Sheahan*, 81 F.3d 1422, 1430-31 (7th Cir. 1996). Reynolds compares this case to *Perez v. Fenoglio*, 792 F.3d 768 (7th Cir. 2015). In that case, the Seventh Circuit concluded that the plaintiff had stated a viable claim

11

for deliberate indifference against grievance officials. The plaintiff alleged that the grievance officials were alerted to his medical condition and inadequate medical care and failed to intervene to rectify the situation. The Court explained that "once an official is alerted to an excessive risk to inmate safety or health . . . 'refusal or declination to exercise the authority of his or her office may reflect deliberate disregard.'" *Id.* at 782 (quoting *Vance v. Peters*, 97 F.3d 978, 993 (7th Cir. 1996)). Here, Reynold's kidney stone pain was treated the day he began complaining of pain and he recovered without incident. When he submitted his grievance there was no need for Hobson to intervene to ensure that he received treatment. Because he had already been treated, her denial of the grievance therefore cannot demonstrate deliberate indifference on her part.

### IV. Conclusion

For the foregoing reasons, the motion for summary judgment, dkt. [27], is **granted in part and denied in part**. Defendants Robinson and Hobson have demonstrated that they were not deliberately indifferent to Reynolds's need for treatment and the claims against them are **dismissed**. There remain genuine issues of material fact regarding whether Defendant York was deliberately indifferent to Reynolds's medical needs. Accordingly, her request for summary judgment is **denied**. No partial final judgment shall issue as to the claims resolved in this Entry.

The Court will direct further proceedings, including a settlement conference and preparation for trial, through a separate order. Reynolds may request the recruitment of counsel to represent him in further proceedings. The **clerk shall** include a form motion for assistance with recruiting counsel with Reynolds's copy of this Entry. If he seeks the assistance of counsel, he shall have **through January 16, 2018**, to file this motion.

**IT IS SO ORDERED.**

Date: 12/12/2017

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

WAYNE REYNOLDS
880584
WABASH VALLEY - CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
Electronic Service Participant – Court Only

Jeb Adam Crandall
BLEEKE DILLON CRANDALL ATTORNEYS
jeb@bleekedilloncrandall.com

Benjamin J Legge
OFFICE OF THE ATTORNEY GENERAL
benjamin.legge@atg.in.gov